Good morning, Your Honors. Merrick Eskegian on behalf of the appellant Stephen Berns, and I'd like to reserve three minutes for rebuttal, please. Okay, and it counts down, so keep your eye on the clock. Thank you, Your Honor. The issue in this appeal is whether we're going to allow an insurance company to sell an insurance policy that provides explicitly that it is going to cover intentional acts, defined as intentional acts, in the policy, and then allow the insurer to turn around and deny a duty to defend based on an interpretation of an intentional acts exclusion whereby they interpret the word intentional as meaning volitional. In other words, the interpretation by Sentry Insurance Company says that any volitional act by the insured is an intentional act under the exclusion, so you're not going to be able to get the coverage that you were promised. Well, the exclusion really applies only to high-level officials. That is to say, that exclusion does not apply to intentional acts of lower-level employees who engage in the forbidden act or the act on which the suit is based. Am I understanding the policy correctly? No, Your Honor. That's not what the exclusion says. To whom does the exclusion apply? Let me ask it this way, then. The exclusion applies to the insured. Yes. That's what it applies to. It doesn't just apply to the principles of the company. But the interpretation that Sentry has tried to come up with to provide an explanation for why they have come up with this idea that volitional... No. You know, let me read this to you, then. Exclusion 1 states, the additional insurance provided by this endorsement does not apply to any dishonest, malicious, fraudulent, criminal or intentional act. However, this exclusion does not apply to you if such act was committed by your employees. That's what I was referring to. I see. All right. But the exclusion itself, the entire exclusion applies to the insured. That portion of it... Right. But if the intentional act is committed by an employee of the insured, of the company, then the exclusion doesn't apply, right? The purpose of that language... No, I'm just saying, yes, it does or doesn't apply. You're correct. You're correct, but that language, the however, talks about the fact that the language that precedes it only applies to senior executives. No, no. We're now on the same page. All right. Thank you, Your Honor. Counsel, how does this Court and perhaps the Federal trial court judges here deal with a situation where there may be, from my perspective at least, and I'm from Louisiana, I understand that. How do we interpret what I perceive to be some conflicts in interpretation by the California courts, particularly the California Supreme Courts in Delgado and Gray? How do we reconcile that and does that imply ambiguity? Your Honor, there are... The definition of intentional and the scope. The approach to interpreting a policy in this situation is explained very well by the Supreme Court in the Gray case in particular, and the courts provide... The general approach to interpreting an insurance policy in California is that if there is any ambiguity in the policy, it's supposed to be interpreted against the insurance company and in favor of coverage. And the approach that's taken is that the coverage opinion, the coverage provisions of the policy first are analyzed, and they're broadly construed in order to accomplish one primary goal. Okay. I understand that. But didn't Delgado and Gray conflict in this sense? One gave a definition which says intentional is very broad. It covers every intentional act, regardless of the consequences or the knowledge that it should have known. This has created a certain type of harm. And Gray said, no, it should include intent to commit not only the act, but also the resulting harm from the act. Isn't that a conflict? No, I don't think so, Your Honor. The decision in Gray has never been criticized. It is the law. The law is that if you promise to the insured under the coverage provisions of the policy that something is going to be covered, and then if you go to the exclusion, you have to interpret that exclusion in light of the promise of coverage under the policy. Delgado doesn't change that analysis. And when you, in this situation, promise to cover intentional acts, when you look at the exclusion in the policy, you cannot decide that that exclusion bars all volitional acts when you promised to cover intentional acts under the policy. You know, the word intentional, I do confess I find it capable of multiple meanings. And intention is really a different word from purpose. I may intentionally perform an act, although I may have varying purposes, and the act that I perform intentionally may do things that I did not have as a purpose. Agreed, Your Honor. And that's part of the point that we're trying to make here, and part of the point of why California law interprets exclusions narrowly. Because a word like intentional can have different meanings. And under tort law, the word intentional means an act that's understanding an intent, a purpose of committing a wrongful act. When we look at the language of this policy, the acts that are defined as being covered, first, wrongful termination. Wrongful termination is defined in this policy as termination of an employment relationship in a manner that is against the law. Or in a breach of an implied agreement to continue employment. Now, this is far beyond just a volitional act. Of course, whenever you terminate an employee, you had to, there had to be volition. You told someone, you're no longer going to work for us. It's always volitional. But this coverage under this policy that was promised was that there would be coverage for wrongful termination. That goes far beyond just a volitional act of letting someone go. And harassment. Harassment is another act that's defined under the coverage provisions of this policy as being covered. The definition is unwelcome advances, whether physical, verbal, requests for sexual favors, and other verbal or physical conduct when, under subsection C, such conduct has the purpose or effect to interfere with an employee's work performance or creates a hostile or intimidating work environment. This goes far beyond volitional conduct. This was promised to the insured that they would get this coverage. They paid extra money for it. They paid for this extra coverage. The cases that are cited by the insurance company in this case all deal with occurrence policies. Those are accident policies. They cover accidents. This insured paid extra money. They paid more money for this additional coverage. And under California law, under the Supreme Court decision in Haines, when you interpret an exclusion in an insurance policy, you have, if there was a representation by the insurer where there would be a reasonable expectation of coverage, when you interpret the exclusion, it has to be conspicuous, plain, and clear. And I submit that when this insurance company said to the insured that it was going to cover intentional acts of wrongful termination and harassment, that that insured had a reasonable expectation that they would be covered for the very acts that were promised. And Counsel, Judge Gould, if I could interject a question. Of course. It's related to the points you're making. But am I right that under California law, exclusions have to be proven by the insured and that the insured would have the burden of proof, that Sentry would have the, I mean by the insurer, that Sentry would have the burden of showing that this exclusion is unambiguous? Yes, Your Honor, that is correct. Under California law, the insurer has the burden of proof to establish what the exclusion means and to establish unequivocally that under its interpretation of the exclusion, not only that it means what the insurer says it means, but that there is no possibility under the allegations in the complaint that there could ever be a possibility of coverage. That's the insurer's very heavy burden. And the reason the insurer has this heavy burden under California law is that we understand in California that these contracts, these insurance policies are contracts of adhesion. The insurer drafted this language. We didn't have an opportunity to be involved in the language. And that's why in Haines, the Supreme Court said, the insurer has to draft the exclusion in such a way that it's clear, conspicuous, and unambiguous. And the interesting thing to note, Your Honors, is that actually what we have in this case is three different interpretations of the meaning of this exclusion. The first interpretation, which we believe is the correct one, is that the exclusion only excludes intentional wrongful acts. The insurer wants to interpret the exclusion as meaning any volitional acts, even though they haven't said volitional in the exclusion. And the district court, interestingly, said that this exclusion still covers negligent and reckless conduct. So we have three different interpretations. I believe ours is the correct one. But the district court here, after reaching its interpretation separately and differently from the insurance company, reached the incorrect conclusion that even though the policy, according to the district court, covers negligent and reckless conduct, this district court found that there was no possibility under the allegations in the complaint that there could ever be a potential for coverage. And that, frankly, is just a wrong and a mistake. So where are we now? Are we fighting only about duty to defend, or are we fighting also about liability? This is just about duty to defend, Your Honor. Yeah. The underlying case, you know, that ship sank already. We, the insurer- No, no, I understand. All I wanted to know, we're talking duty to defend. We're not talking liability, okay. Thank you. And- You know, why don't we do this?  Let's hear from the other side, and then you'll have that time to respond. Thank you, Your Honor. Good morning, Your Honors. Eldon Edson for Eppley Century Select Insurance Company. May it please the Court. Your Honor, the district court's ruling that there is no duty to defend is consistent with the express terms of the Century policy, the rules of policy interpretation, and it is respectfully submitted that the district court's decision be affirmed on appeal. Do you disagree with the contention that the word intentional can be ambiguous? Your Honor, it certainly is not ambiguous. It's our position that it is clear on- So, but are you saying intentional can never be ambiguous, or are you just saying it's not ambiguous here? Well, it is certainly not ambiguous within the confines of this policy. It's very clear exactly what intentional means. The dictionary definition, when a policy term is not specifically defined within the policy, we look to its plain and ordinary meaning. And if you look at dictionary definitions of the word intentional, it is done in a way that is planned or intended, or an act that is done with purpose. In this case, we're talking about an intentional act. Act is also defined in the policy as conduct. So, what we're talking about is purposeful conduct. And the Court's comments- Well, you might be. I mean, that's one possible interpretation of the word. I'm sure you're familiar with the canon of interpretation, justum generis. So, how does that operate here? Well, actually, I'm not exactly sure what Your Honor is referring to. Oh, well, it's Latin. Well, that's probably part of the problem. Roughly translated, it means a meaning of word can be understood from the meaning of the words that surround it. That is to say, of the same variety. And the words that surround intentional are actually very interesting words. Any dishonest, malicious, fraudulent, criminal, or intentional act. Now, I've just given you four words that are terrible things. Dishonest, malicious, fraudulent, criminal. And then I've given you a word that you say isn't terrible at all. Just anything that you intend to do. It strikes me that justum generis should at least suggest to us that intentional should have some meaning more precise. I mean, how do I want to say it? A little worse than merely intending to do the act that you did. Because if you interpret the policy, I think if they intended to fire this woman, the exclusion applies. Period. End of story. Your Honor raises a very good point. And there are really two different components to exclusion, what we'll call the intentional acts exclusion. One is the what and the other is the who. And Your Honor hit on the who part earlier. The purpose of the exclusion as applied is that the policy doesn't provide coverage for executive officers, such as Burns, for their own intentional acts. Well, but I understand that. But the question is, what does the word intentional mean? And I understand that the exclusion is if the people at the top do certain bad things, we're not going to cover you. We're going to cover your employees because you may not have such control over the behavior of employees. I got that. But that takes us back to the question of what intentional means in terms of a bad thing that we're not going to insure you for. Intentional, meaning I fired this woman. And so that would mean, under your interpretation of the policy, any time a high level person in the company, defined here in the exclusion, fires somebody, you say that was an intentional act. Whether it was a wrongful act or a proper act, you're not covered. That's a very surprising reading of this policy to me. But that's exactly what the policy says, Your Honor. Well, that's what you say. Even if the act was not wrongful? In other words, it was based on some cause that he's yelling at her because he thinks that she, his sister, misappropriated some company data or what have you. Right. Your Honor, another good question. It doesn't matter whether the conduct's wrongful. It doesn't matter whether she deserved to be fired 50 times over. The point is he did the act. He fired her. And this policy, by its expressed terms, does not cover him for that act. As the employer, when I get insurance, there are two different risks we're looking at here. One is the risk that I can't control my own behavior or I get sued because of something I do. And there's another risk that my office manager may do something that I have less control over. This policy covers that second situation where, in my example, my office manager gets me sued because she does something. That's a different risk. It's a materially different risk than the risk that, as the executive officer, I do something. But counsel, I've got a question for you, if I may. Yes, Your Honor. And I will not ask you to interpret Latin. Thank you. Plain Californian or Washington English. Does Sentry have the burden to show that intentional is unambiguous? Or does Burns have the burden to show that intentional is ambiguous? Your Honor, thank you for that question. Your Honor, generally, the insurer has the obligation to show the application of the exclusion. However, it's up to the court to decide, based on the plain reading of the policy language, how it's to be interpreted. So in this situation, it's for the court to decide what intentional act means. It is, however, Sentry's burden to show that the policy exclusion applies to the facts of this case. And in this case, the facts are absolutely clear and not in dispute. We have a situation where Mr. Burns was the executive officer at the insured business. And it was Mr. Burns who intentionally fired and intentionally spoke the words to Ms. Sue Burns Porter, which are the basis for her claims in the underlying action. Thank you. Counsel, if I may. Of course. Do you agree or disagree that California courts have given different interpretations or definitions in the insurance context, as here, to the term intentional? Your Honor, in the insurance context, I think, particularly if we're talking about intentional acts, there is a considerable amount of case law interpreting intentional acts outside the scope of an employment practices endorsement. And intentional acts very clearly means purposeful acts. There are out-of-state cases which have looked at this exact policy language. We cited them to the court. The court submitted the Chandler versus Sentry decision. And there's also other case law that we cited to the court, which looked at analogous intentional acts types exclusions. And those cases all say that intentional acts are not intentional results. If the policy is interpreted as requiring a showing on behalf of the carrier that there is a, you know, you have to show intentional wrongful acts or something, that would be an improper judicial construction, because it would be reading language into the policy that's simply not there. Are you familiar with the Ninth Circuit case in Allstate versus Callaway? It's not so close to the front of my mind that I can remember the exact facts, Your Honor. I get the impression from reading that case that intentional acts exclusion was ambiguous because it did not make clear whether the phrase intentional act referred merely to the intent to act or to the intent to cause the consequences of the act. And, Your Honor, there are cases which look at similar type exclusions. There really are three groups of cases that were cited by the appellants. And I'm glad Your Honor raised this. One group of cases looks at different types of language, where, for example, there's the Markell decision that counsel cited to the court in the briefs. It was materially different language. It was the intention to cause a result. And we do see some of that language in some policy exclusions. That doesn't apply here. There are other cases that were cited by the appellant that deal with insurance code section 533. And there are other cases that deal with the express policy exclusion for bodily injury or property damage, which is expected or intended from the standpoint of the insured. If we look at the scope of the various types of, we'll call it generally exclusionary language, you can look at it as a V. And at the bottom of the V would be insurance code section 533 claims. These are the narrowest, this is the narrowest application. Then above that you have the expected intended damage exclusionary language, which clearly focuses on a result. It says, and it's subjective, it says from the standpoint of the insured. At the broadest level, when we're talking about exclusionary language, you have straight intentional acts and exclusions like the one in the century policy. And if we apply the clear, plain, and unambiguous language of the policy, it applies to clearly exclude coverage for the claims in this situation. And if I may, I don't want to overdo my welcome here, but in the sense of California's interpretations of how broadly or strictly they construe a duty to defend situation as here versus coverage issues, is there some distinguishment in that regard? That there's perhaps a stricter analysis of your duty to defend as opposed to your coverage? Yeah, that's a very good question, Your Honor. And Your Honor's right. If you're looking at indemnity exposure, that's different than exposure for the duty to defend. If there's a potential for coverage, there's a duty to defend. It's Sentry's position that the clear and express language completely eliminates that potential for coverage. And again, it just comes down to the policy language, reliance on the legal authorities, and given the underlying facts. They're simply, the district court was quite correct. Do you know how large this company was, by the way? I think it was 15 employees, Your Honor. In fact, it was 15 employees. And given the size of that company, who do you think they were buying the coverage for? Meaning, they're not going to be a lot of lower level employees who are going to do the firing. It's going to be the people named in the exclusion who are going to do the firing. It's going to be somebody like a partner, a director, or an executive officer. And you say anything they do isn't covered by the policy they just bought. Because it's such a small little company, I don't think there are any employees who are not excluded under the exclusion who will, for whom they're buying that policy. I mean, are you selling a worthless policy to this 15 person firm? Absolutely not. So what is the value to them of this policy, given that, I think I'm right, that given the size of this company, the only people who are going to do the firing will be characterizable as a partner, director, or executive officer. Well, your Honor's question is an excellent one. It raises a number of important questions. You know, whenever somebody says it's an excellent question, that leads me to suspect I'm on to something. So what am I on to here? Okay, I'll explain. It's not up to the carrier to determine the structure of the insured's business. The insured can structure their business. So who sold them the policy? Was this through a broker of some kind? Yes, it was. It was through an agent. Yeah, and so what did your company know at the time they sold the coverage? Well, the size of the company would have been known. So they would have known there were only 15 people. Oh, okay. But it's not up to an insurance carrier to... To sell something that's worth anything. Well, no, this policy has considerable worth, Your Honor. How does it? I just told you how this exclusion seems to me entirely to negate it. Well, Your Honor, I think the... In our brief at page, I want to say 45, but I'm drawing a blank. We went through and discussed numerous possible ways that the century policy would provide coverage, that it wasn't illusory coverage. And Your Honor hit upon some of them earlier, which refer to the intentional acts of the employees. Yeah, but we've just excluded that, given that this is a 15-person company. That is to say, I'm inferring that it's very unlikely that there's going to be an employee of this company, this 15-person company, who is an employee to whom the exclusion does not apply, who's going to be doing the firing. Well, Your Honor, there was actually another claim, which is part of the record in this case, in which the insured was sued as a result of harassment among the different employees. And based on the nature of the claim, it was impossible for us to exclude the potential that the employees were engaged in harassment. So that's one example. There's also the potential for negligence exposure. There is the potential that even an executive officer could be faced with a negligent hiring or negligent supervision claim, which is in fact the absence of an intentional act. I'm not doing something. And in those circumstances, there would be coverage under the policy. So it's not a useless policy by any stretch. No, that's a good response. I'll get it. Okay. So, Your Honor, just very briefly, because I see myself running down the clock here. Basically, the appellant makes a number of arguments in support of their position. They contend the court should rewrite the policy. Clearly, that's contrary to California law. The district court didn't take debate on that. Has your company rewritten the policy? Does this exclusion exist in this form now? Your Honor is aware, I think in the record, that in the following policy year, there was a change in the form and there was a definitional change, which was recognized by the district court. And so the language has changed. The effect did not change, though. But the language has changed. The language has changed. But it's to bring in... What's happened in this context in the insurance industry is that employment-related practice policies moved toward a definitional change where you would refer to wrongful acts. And within wrongful acts, you would have discrimination claims, you'd have harassment claims, you'd have wrongful term claims. So it's merely a definitional shift as opposed to any shift in the substance of the coverage. Okay, good. All right. Perfect. Can I answer anything else?  Your Honor? Perfect timing. Okay, thanks. Great, thank you, Your Honor. Thank you, Your Honors. Thank you. Response? Thank you, Your Honors. You picked up on a point that I think is interesting, and that is that the language of the policy did change. There was the 2004 endorsement, which was the one that my client purchased and was in effect during the acts in question. And then my client continued to purchase through this company and purchased the 2009 endorsement. And they're both employment practices, liability endorsement policies. And Century Insurance Company, when it submitted to the Department of Insurance an application for approval to use this new form, represented to the Department of Insurance that the change from the words intentional act in the exclusion to the terminology of excluding intentional wrongful acts under the exclusion had no change to the coverage. And that doesn't make any sense if what the insurance company is saying was their intent and when they developed this policy was to exclude all volitional acts. Of course not, because the term wrongful acts is defined as the wrongful termination, the harassment, which as a matter of definition are not just volitional, they are much more than that. We went through that in the first part of my argument. And they also submitted, the insurer didn't just make this representation to the Department of Insurance, they made that same representation in a notice to all policyholders. They said the change in the language doesn't change coverage, it's just a clarification. Well, I agree, it is a clarification. It did show that the intent was to cover all intentional wrongful acts, which are defined as intentional in the policy. And you had asked counsel for century whether the term intentional can have different meanings in different circumstances. There has never been a case in the history of California law where a policy that promised to cover intentional acts ever was allowed to have an exclusion for intentional acts as barring any volitional acts. Never, never, never. It couldn't happen because we try to have the reasonable expectations of the insured be achieved in this state. We don't want insurers that have complete control over the policy language and the exclusion to pull the wool, to pull the rug out from under us after we spent the extra money and then have them say, oh no, no, we don't cover volitional conduct. I know we promise, but we don't. So counsel, are you asking us to rule as a matter of law on this issue? Or is there a tribal issue yet still on, say, the subjective intent of the, of Mr., what's the fellow's name? The one who yelled, Mr. Burns. Yes, this should be decided as a matter of law. This, with all due respect, this is not a close call. And I'm surprised that we had to be here because this policy clearly, you went through the terminology of it. Those words in the exclusion, those are all very, very bad words. And then they have at the end of it, the intentional. Did you make the Ustom generous argument? You know, I didn't use the Latin, Your Honor. He will next time. I will next time. Okay, got it. Okay, thank you very much. Thank you very much. Thank both sides for their argument. United States, excuse me, I'm reading it from the wrong page. Burns versus Century Select Insurance Company, now submitted. Thank both sides for their good argument. Thank you, Your Honor. Thank you.
judges: W. Fletcher, Gould, Lemelle